IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.  13-cv-02485-REB-KLM

CHRISTOPHER KEOUGH,

     Plaintiff,

v.

SGT. BENITA PACKARD,
THE CITY AND COUNTY OF DENVER, COLORADO,

     Defendants.

_____

### RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

     This matter is before the Court on Defendant Sergeant Benita Packard ("Packard")

and Defendant The City and County of Denver, Colorado's ("Denver" and collectively, with

Packard, "Defendants") **Motion to Dismiss** [#29][1] (the "Motion").  The Motion is referred

to the undersigned for recommendation regarding disposition [#30].  Plaintiff filed a

Response to the Motion [#36].  Defendants filed a Reply [#39].  The Court has reviewed

the Motion, the Response, the Reply, the entire docket, and the applicable law, and is

sufficiently advised in the premises.  For the reasons set forth below, the Court respectfully

**RECOMMENDS** that the Motion [#29] be **GRANTED.**

### I.  Summary of the Case

     On November 6, 2013, Plaintiff filed the Amended Complaint (the "Complaint"),

_____

[1]    "[#29]" is an example of the convention the Court uses to identify the docket number
assigned to a specific paper by the Court's case management and electronic case filing system
(CM/ECF).  This convention is used throughout this Recommendation.

asserting six[2] claims against Defendants.  *Am. Compl.* [#27] ¶¶ 29-57.  Plaintiff brings First

Amendment retaliatory prosecution and arrest claims against Defendant Packard.  *Id.* ¶¶

29-38.  In addition, Plaintiff brings Fourth Amendment claims of wrongful detention, false

imprisonment, and malicious prosecution against Defendant Packard.  *Id.* ¶¶ 39-48.

Plaintiff brings a municipal liability claim ("*Monell* claim") against Defendant Denver.  *Id.* ¶¶

49-57.  Plaintiff seeks compensatory damages, punitive damages, equitable relief, interest,

costs, expert witness fees, reasonable attorney fees, "and any other and further relief that

this Court shall deem just and proper."  *Id.* ¶ 57.  Plaintiff brings his claims under 42 U.S.C.

§ 1983 and asserts that this Court has jurisdiction pursuant to 42 U.S.C. § 1983.  *Id.* ¶ 4.

Plaintiff alleges that, "[o]n August 1, 2011, [he] identified a one-of-a-kind [b]ackpack,

that had been earlier stolen from his storage facility, being carried by a person on the street

whom he did not know."  *Id.* ¶ 13.  According to Plaintiff, he "called the police and

confronted the person wearing the backpack, whom he later learned was named Jeffrey

Sinton [("Sinton")]."  *Id.*  Plaintiff asserts that he "demanded" that Mr. Sinton return his

backpack to him.  *Id.* ¶ 14.  Plaintiff maintains that, in response to his demand, Mr. Sinton

shoved Plaintiff.  *Id.*  Plaintiff avers that "[t]he confrontation was then immediately

concluded by a third party who jumped into the fray and punched [Plaintiff] in the face."  *Id.*

Plaintiff asserts that "[p]olice arrived and investigated the incident [(the "Incident")]."

*Id.* ¶ 15.  Plaintiff alleges that "Officer Bart Stark [("Stark")] suspected that although

_____

[2]  The Court construes Plaintiff's "first claim for relief" as two separate claims, namely, retaliatory prosecution and retaliatory arrest.  *See Am. Compl.* [#27] ¶¶ 29-38. Despite the relatively few factual allegations in the Complaint concerning retaliatory arrest, the Court considers the claim out of an abundance of caution.  *See generally id.*  With regard to Plaintiff's "second claim for relief," the Court construes this claim as three separate claims, namely, wrongful detention, false imprisonment, and malicious prosecution.  *See id.* ¶¶ 39-48.

[Plaintiff] was the only person with physical injuries, [he] might have been the aggressor of the [I]ncident because he first confronted [Mr. Sinton]." *Id.*   According to Plaintiff, "Officer Stark could not adduce enough evidence to establish probable cause . . . [and thus] refused to take a police report." *Id.*  Plaintiff asserts that "Officer Stark concluded that there was insufficient probable cause to make any arrests based upon the reports of the [I]ncident from witnesses." *Id.* ¶ 18.  Plaintiff maintains that Mr. Sinton "'refused' to be a witness against [him]." *Id.*  According to Plaintiff, "Mr. Sinton was eventually arrested on an unrelated petty offense warrant that was outstanding." *Id.*

Plaintiff alleges that he "was upset, because he knew that at least one witness had lied about the [I]ncident, he did not cause the circumstances under which he was punched in the face, and that police would not complete a police report or otherwise investigate." *Id.* ¶ 16.  According to Plaintiff, he "wanted a police report to be taken to address the matter in civil court, or to otherwise demonstrate that the [I]ncident [had] occurred and was investigated by police." *Id.* ¶ 17.

Plaintiff asserts that "[a]fter the [I]ncident, [he] went to Denver Police Department District Six [("District Six")], where he believed [O]fficer Stark was stationed." *Id.* ¶ 19. Plaintiff alleges that he "asked for the supervising sergeant on duty, so that he could make a complaint about Officer Stark." *Id.* ¶ 20.  According to Plaintiff, "the Denver Police Department, including [District Six][,] has a citizen complaint procedure that requires citizen complaints to go through formal channels, beginning with a supervisor or sergeant." *Id.* ¶ 21.

Plaintiff alleges that Defendant "Packard cut off [Plaintiff] while he was explaining [what happened during the Incident] and rudely told [him] that she was not going to listen

to [him] any more." *Id.* ¶ 22.  According to Plaintiff, Defendant Packard "said she would not investigate or discipline her officer."  Plaintiff avers that Defendant Packard "threatened that if [he] did not give up on his complaint, she would charge him with a crime and arrest him." *Id.*  Plaintiff asserts that he "insisted that the complaint go through formal channels and be investigated."  *Id.* ¶ 23.  Plaintiff maintains that Defendant Packard "became further upset that [he] insisted on further investigation. . . .   [and she] responded with intent to punish, assert arbitrary authority and dissuade [him] from making a citizen complaint."  *Id.* ¶¶ 23-24. According to Plaintiff, Defendant Packard "seized [Plaintiff] by ordering him to remain in a confined room [(the "Room")] for approximately 30 minutes, under threat that if he left he would be charged with resisting arrest (or a like charge) and then she charged [him] with assault and disturbing the peace."  *Id.* ¶ 24.

Plaintiff alleges that "[w]hile [he] was seized, [Defendant] Packard spoke to Mr. Sinton and claimed to elicit evidence from him that supported criminal charges against [him] for assault and disturbing the peace."  *Id.* ¶ 41.  Plaintiff asserts that Defendant "Packard improperly pressured and/or persuaded Mr. Sinton to become a witness against [him] in order to assist her in asserting false charges against [him] in retaliation for [his] complaint." *Id.* ¶ 36.  Plaintiff maintains that "Mr. Sinton provided no more information [to Defendant Packard] than had already been disclosed to Officer Stark, previously."  *Id.* ¶ 42.

According to Plaintiff, "Defendant Packard knowingly and intentionally charged [him] with the crimes of assault and disturbing the peace in retaliation for [his] speech and criticism through [District Six's] complaint procedures."  *Id.*  ¶ 37.  Plaintiff asserts that Defendant Packard "submitted false information regarding the underlying crimes to the District Attorney responsible for charging [him] [with] assault and disturbing the peace."  *Id.*

4

¶ 44.

Plaintiff asserts that "[a] criminal case was brought against [him] as a result of the representations made by [Defendant] Packard." *Id.* ¶ 45.  According to Plaintiff, "the District Attorney could not adduce sufficient evidence to prosecute [him]." *Id.* ¶ 46.  Plaintiff avers that "the charges had to be dismissed and were dismissed in [his] favor." *Id.* ¶¶ 28, 46.

Plaintiff alleges that his "original complaint was never further investigated." *Id.* ¶ 26.  Plaintiff asserts that he "had to go to a different police station in order to file a complaint that the complaint submitted to [Defendant] Packard had been ignored." *Id.*  According to Plaintiff, "there have been other incidents where citizens were threatened, dissuaded or otherwise told not to continue with complaints and criticisms [once] they complained to supervisors about officer misconduct." *Id.* ¶ 53.  Plaintiff avers that Defendants "have participated in other incidents where citizen complaints have been denied without investigation, deterred at the complaint stage and/or officers have retaliated against those who have submitted complaints." *Id.* ¶ 27.  Plaintiff maintains that Defendant "Packard was a final decision-maker for [Defendant Denver] regarding the [District Six] complaint procedure . . . and the decisions related to the arrest and charging of [Plaintiff]." *Id.* ¶ 50.  According to Plaintiff, Defendant Packard's "decisions represent the decisions of [Defendant Denver]." *Id.*

Plaintiff alleges that "[t]his is not the first time that Defendant . . . Packard has made decisions for [District Six] to conceal evidence, hide the truth, or arbitrarily suspend police department procedures to achieve results that she desired at the expense of justice." *Id.* ¶ 51.  Plaintiff avers that "[i]n February, 2012, [Defendant Packard] concealed evidence and refused to charge a woman after a lower-ranking officer attempted to arrest the woman for

a DUI." *Id.* Plaintiff asserts that "there have been other incidents, of which [Defendant Denver] has knowledge, where Defendant . . . Packard and other officers have acted with reckless disregard for the rights of suspects and citizens, including other incidents of evidence tampering and retaliation for expression of citizen's [sic] First Amendment rights and have not been sufficiently disciplined to refrain from such conduct." *Id.* ¶ 52.

Plaintiff alleges that Defendant Denver "has given insufficient training and discipline to effectively cause [its] officers to refrain from using police authority in response to First Amendment protected speech that may offend or frustrate an officer." *Id.* ¶ 54. Plaintiff maintains that Defendant Denver "has insufficiently disciplined [Defendant] Packard to refrain from concealing/misrepresenting evidence, hiding the truth, or arbitrarily suspending police department procedures to achieve results that she desired at the expense of justice." *Id.* ¶ 55. Plaintiff asserts that Defendant Denver's "policies, practices, and lack of training and supervision were likely to lead to the deprivation of Plaintiffs' [sic] Constitutional rights and if not changed would likely lead to the deprivation of other similarly situated persons' rights." *Id.* ¶ 56. According to Plaintiff, Defendant Denver's "policies, practices and lack of training and supervision were a moving force behind Plaintiffs' [sic] First Amendment Constitutional deprivations and the resulting damages." *Id.* ¶ 57.

In the Motion, Defendants argue that "Plaintiff fails to state facts showing that Defendant Packard violated his clearly established First Amendment rights." *Motion* [#29] at 3. Defendants assert that "[t]he Complaint fails to allege facts showing that Plaintiff's clearly established Fourth Amendment rights were violated." *Id.* at 7. Defendants maintain that "Plaintiff fails to state a plausible [*Monell*] claim." *Id.* at 11.

In the Response, Plaintiff argues that he "has shown sufficient facts to form a

plausible, primae [sic] facia [sic] assertion that Defendant Packard has violated [his] clearly established First Amendment rights when she retaliated against [him] by seizing him, attempting to manipulate evidence to fabricate probable cause, and by charging [him] with crimes that she know [sic] [he] did not commit." *Response* [#36] at 3-4.  According to Plaintiff, the "Complaint contains sufficient facts to demonstrate that Defendant Packard violated [his] Fourth Amendment rights when she confined him to [the] [R]oom for 30 minutes and manipulated evidence to ensure that [he] was charged and prosecuted with crimes that [she] knew he did not commit." *Id.* at 8.  Plaintiff maintains that the "Complaint contains sufficient factual materials to support a [*Monell*] claim utilizing three different theories[:] (1) Defendant Packard as a final decision maker, (2) the failure of [District Six] to supervise/discipline the rogue supervisor, and (3) the failure of [District Six] to sufficiently train its employees and supervisors not to retaliate against citizens making complaints against officers, even when those officers might be offended." *Id.* at 11.

In the Reply, Defendants argue that "Plaintiff fails to cite applicable authority showing that his clearly established First Amendment rights were violated." *Reply* [#39] at 1. Defendants assert that "Plaintiff has failed to state facts overcoming Defendant Packard's assertion of qualified immunity from his Fourth Amendment claims." *Id.* at 5.  Finally, according to Defendants, "Plaintiff has failed to allege facts supporting his *Monell* claim." *Id.* at 7.

## II.  Standard of Review

A motion to dismiss pursuant to Rule 12(b)(6) tests "the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true." *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994) (citing *Williams v. Meese*, 926 F.2d 994, 997

(10th Cir. 1991)); Fed. R. Civ. P. 12(b)(6) (stating that a complaint may be dismissed for "failure to state a claim upon which relief can be granted").  To withstand a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain enough allegations of fact 'to state a claim to relief that is plausible on its face.'"  *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1200 (10th Cir. 2007) (quoting *Twombly*, 550 U.S. at 570) ("The complaint must plead sufficient facts, taken as true, to provide 'plausible grounds' that discovery will reveal evidence to support the plaintiff's allegations."). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).  Moreover, "[a] pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do.  Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement."  *Id.* (citation omitted) (internal quotation marks omitted).

"The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citation omitted). As the Tenth Circuit has explained, "the mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims." *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007).  However, "[t]he court's function on a 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether

the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Sutton v. Utah State Sch. for the Deaf & Blind,* 173 F.3d 1226, 1236 (10th Cir. 1999) (citation omitted) (internal quotation marks omitted).  Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.  *Iqbal*, 556 U.S. at 678.

### III.  Analysis

### A.  Defendant Packard

Defendant Packard argues that she is entitled to qualified immunity with regard to Plaintiff's First Amendment and Fourth Amendment claims.  *See Motion* [#29] at 3, 7-11. A law enforcement officer sued under § 1983 is entitled to qualified immunity unless it is shown that the officer violated a constitutional right that was clearly established at the time of the challenged conduct.  *Plumhoff v. Rickard*, __ U.S. __, __, 2014 WL 2178335, at *9 (May 27, 2014) (citing *Ashcroft v. al-Kidd*, 563 U.S. __, __, 131 S. Ct. 2074, 2080 (2011)). "The doctrine of qualified immunity shields government officials performing discretionary functions from liability for damages 'insofar as their conduct does not violate clearly established constitutional rights of which a reasonable person would have known.'" *Boles v. Neet*, 486 F.3d 1177, 1180 (10th Cir. 2007) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  When the defense of qualified immunity is raised, the Court considers whether the plaintiff's factual allegations demonstrate that the defendant violated a constitutional right, and, secondly, whether that constitutional right was clearly established at the time of the alleged violation.  *Saucier v. Katz*, 533 U.S. 194, 200-01 (2001); *cf. Pearson v. Callahan*, 555 U.S. 223, 242 (2009).  Both prongs must be satisfied.  *Saucier*, 533 U.S. at 201.  District courts, as the triers of fact, have the discretion to determine which

prong is most appropriate to address first. *Pearson*, 555 U.S. at 242.

### 1. Retaliatory Prosecution Claim

In general, a properly stated claim for retaliation for the exercise of First Amendment rights must include three elements: (1) the plaintiff was engaged in activity protected by the First Amendment; (2) the defendant's actions caused the plaintiff to suffer an injury that would reasonably have a chilling effect on the exercise of protected activity; and (3) the defendant's action was "substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct." *Shero,* 510 F.3d at 1203 (quoting *Worrell v. Henry,* 219 F.3d 1197, 1212 (10th Cir. 2000)).  In addition, in 2006, the Supreme Court settled a circuit split and held that where the retaliatory action taken was a criminal prosecution, a plaintiff bringing suit under § 1983 must plead and prove a fourth element: lack of probable cause for the allegedly retaliatory prosecution. *Hartman v. Moore,* 547 U.S. 250, 261-66 (2006).  The Supreme Court explained that because prosecutorial immunity prevents the plaintiff from directly suing the prosecutor for damages, the plaintiff must demonstrate that the defendant he sues in the prosecutor's stead—typically, the law enforcement officer who allegedly acted with a retaliatory motive—caused the retaliatory prosecution. *Id.* at 261-63.  "To 'bridge the gap between the nonprosecuting government agent's motive and the prosecutor's action,' the [Supreme] Court held that a plaintiff bringing a claim for retaliatory prosecution must allege and prove an absence of probable cause[,]" which serves as strong circumstantial evidence that the prosecution was not initiated for an alternative, non-retaliatory purpose. *McBeth v. Himes,* 598 F.3d 708, 718 (10th Cir. 2010) (quoting *Hartman,* 547 U.S. at 261-63).  *Hartman* thus placed on the plaintiff the burden of pleading, and then proving, that there was no non-retaliatory reason for the prosecution. *Id.*;

*Hartman,* 547 U.S. at 265-66 ("it makes sense to require such a showing [of the absence of probable cause] as an element of a plaintiff's case [for retaliatory prosecution], and we hold that it must be pleaded and proven.").

Plaintiff, however, argues that he "need not show a lack of probable cause for an allegedly retaliatory arrest or prosecution." *Response* [#36] at 4. In support of his position, Plaintiff cites the Tenth Circuit's opinion in *Howards v. McLaughlin. Id.* According to Plaintiff, the *Howards* court determined that "an arrest made in retaliation of an individual's First Amendment rights is unlawful even if the arrest is supported by probable cause." *Id.* (citing 643 F.3d 1131, 1146 (10th Cir. 2011), *overruled on other grounds by Reichle v. Howards,* 132 S.Ct. 2088 (2012)). Defendants, however, argue that "neither *Howards* nor *Reichle* altered the controlling rule that the absence of probable cause is a required element in retaliatory prosecution claims." *Reply* [#39] at 2.

Defendants are correct. The *Howards* court discusses probable cause with regard to retaliatory arrest, as Plaintiff himself acknowledges, not retaliatory prosecution. *See Howards,* 643 F.3d at 1148 ("We decline to extend *Hartman*'s 'no-probable-cause' requirement to this *retaliatory arrest* case." (emphasis added)). *Howards,* therefore, has no bearing on the elements of a retaliatory prosecution claim. The *Hartman* Court's requirement that the plaintiff must plead and prove an absence of probable cause for the alleged retaliatory prosecution still stands.

Plaintiff argues, and Defendants do not dispute, that Plaintiff has sufficiently alleged the first three elements of a retaliation claim. *See Response* [#36] at 5-6; *cf. Motion* [#29] 3-7; *Reply* [#39] at 2-4. Thus, the only element in contention is whether Plaintiff has met his burden of sufficiently alleging a lack of probable cause for Defendant Packard's

11

inducement of his prosecution.  *See Hartman,* 547 U.S. at 261-66.

Courts determine the existence of probable cause by "examin[ing] the events leading up to the arrest, and then decid[ing] 'whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to' probable cause." *Maryland v. Pringle*, 540 U.S. 366, 371 (2003) (quoting *Ornelas v. United States*, 517 U.S. 690, 696 (1996)).  Probable cause's existence is founded on "'a reasonable ground for belief of guilt' and . . . the belief of guilt must be particularized with respect to the person to be searched or seized."  *Id.* (quoting *Brinegar v. United States*, 338 U.S. 160, 175 (1949)) (further citation omitted).  In addition, an officer must have "had reason to believe that a crime–any crime–occurred." *United States v. Turner*, 553 F.3d 1337, 1345 (10th Cir. 2009) (citing *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004)).  Furthermore, "[v]ictim complaints may alone form a basis of probable cause."  *Marotta v. Cortez*, No. 08-cv-02421-CMA-CBS, 2009 WL 5491622, at *8 (D. Colo. Nov. 3, 2009) (citing *Martinez v. Simonetti*, 202 F.3d 625, 634 (2d Cir. 2000); *Weintraub v. Board of Education of City of New York*, 423 F. Supp. 2d 38, 53-54 (E.D.N.Y. 2006), on reconsideration in part, 489 F. Supp. 2d 209 (E.D.N.Y. 2007)); *see also Woods v. City of Chicago*, 234 F.3d 979, 997 (7th Cir. 2000) (citing *Spiegel v. Cortese*, 196 F.3d 717, 724-26 (7th Cir. 1999); *Gerald M. v. J. Conneely*, 858 F.2d 378, 380-81 (7th Cir. 1988)) ("We have found probable cause to arrest based upon uncorroborated citizen complaints . . . .").

Construed in the light most favorable to Plaintiff, the only allegations arguably relating to whether probable cause existed for Defendant Packard to induce his prosecution are as follows:

On August 1, 2011, Plaintiff . . . identified a one-of-a-kind [b]ackpack, that

12

had been earlier stolen from his storage facility, being carried by a person on the street whom he did not know. [Plaintiff] called the police and confronted the person wearing the backpack . . . .

During the time it took for police to arrive, [Plaintiff] confronted the man and demanded his backpack. . . .

Police arrived and investigated the [I]ncident.  Officer Bart Stark suspected that although [Plaintiff] was the only person with physical injuries, [Plaintiff] might have been the aggressor of the [I]ncident because he first confronted the man with the backpack.  However, Officer Stark could not adduce enough evidence to establish probable cause regarding [Plaintiff].  As a result, the officer refused to take a police report.

[Plaintiff] was upset, because he knew that at least one witness had lied about the [I]ncident, he did not cause the circumstances under which he was punched in the face, and that police would not complete a police report or otherwise investigate.

[Plaintiff] wanted a police report to be taken to address the matter in civil court, or to otherwise demonstrate that the [I]ncident occurred and was investigated by police.

. . .

[Plaintiff] later came to [District Six] to make a complaint about the investigating officer, and asked that the decision regarding whether to draft a police report be overturned.

[Defendant] Packard had no reason to review the circumstances underlying the [I]ncident, except the decision whether or [not] the officer should have filed a police report.

However, [Defendant] Packard became frustrated and angry that [Plaintiff] was making a complaint about one of her officers and [Plaintiff] would not give up on the citizen complaint.

[Defendant] Packard threatened that if [Plaintiff] did not give up on his complaint, she would charge him with a crime and arrest him.

*Am. Compl.* [#27] ¶¶ 13-15, 31-34.

[Defendant] Packard responded with intent to punish, assert arbitrary authority and to dissuade [Plaintiff] from making a citizen complaint. [Defendant] Packard seized [Plaintiff] by ordering him to remain in a confined

room for approximately 30 minutes, under threat that if he left he would be charged with resisting arrest (or a like charge), and then she charged [him] with assault and disturbing the peace.

[Defendant] Packard was aware that [O]fficer Stark investigated and that there was no probable cause to arrest [Plaintiff], but she insisted that Mr. Sinton press charges against [Plaintiff] so that she could retaliate against [Plaintiff] for not giving up on the citizen complaint about one of her officers.

*Id.* ¶¶ 24-25.

In examining whether Defendant Packard has qualified immunity regarding Plaintiff's retaliatory prosecution claim, the Court must determined whether Plaintiff has sufficiently alleged a lack of probable cause to prosecute him. *Hartman*, 547 U.S. at 261-66. Simply stated, Plaintiff's allegations are insufficient. It is Plaintiff's burden to plead absence of probable cause. *See Hartman,* 547 U.S. at 261-66 (holding that a plaintiff bringing a retaliatory prosecution claim must plead lack of probable cause). Plaintiff's burden cannot be borne on the shoulders of an unsubstantiated legal conclusion. *See Coburn v. Nordeen*, No. 02-3249, 2003 WL 21662064, at *2 (10th Cir. July 16, 2003) (holding that plaintiff's conclusory allegations did not adequately plead lack of probable cause); *Marble v. Strecker*, No. CV-12-186-M-DWM, 2014 WL 1404896, at *6 (D. Mont. April 10, 2014) (same); *Alfred v. New Jersey*, Civil Action No.13-0332 (RBK), 2013 WL 4675536, at *6 (D.N.J. August 29, 2013) ("It is not sufficient to state, in conclusory fashion, that there was no probable cause for the prosecution."); *King v. City of New York*, No. 12-CV-2344 (NGG) (RER), 2013 WL 2285197, at *5 n.3 (E.D.N.Y. May 23, 2013) ("Plaintiff's mere conclusion that there was no probable cause does not meet the elements of a plausible claim." (citation omitted)); *Sherrod v. Travis*, No. 13 C 417, 2013 WL 593955, at *4 (N.D. Ill. February 15, 2013) (same); *Giacalone v. Pennsylvania Ins. Fraud Prevention Auth.*, Civil

14

No. 3:11-CV-01647, 2012 WL 629437, at *4 (M.D. Pa. February 27, 2012) ("Plaintiffs'
insistence that there was no probable cause for the search warrant, without any further
factual allegations, is not enough to overcome the pleading standards set forth in Rule 8
of the Federal Rules of Civil Procedure." (footnote omitted)); *Ghaster v. City of Rocky River*,
No. 1:09CV02080, 2010 WL 2802682, at *5 (N.D. Ohio July 13, 2010) (citation omitted)
(same); *Moore v. Miami-Dade Cnty.*, 502 F. Supp. 2d 1224, 1234 (S.D. Fla. 2007) (citation
omitted) (same); *Hann v. Michigan*, No. 05-CV-71347-DT, 2007 WL 1322328, at *7 (E.D.
Mich. March 2, 2007); *Hibbard v. Gallivan*, No. 99-CV-0145E(F), 1999 WL 782174, at *2
(W.D.N.Y. September 15, 1999) (same); *Turner v. Fallen*, No. 92 C 3222, 1993 WL 15647,
at *5 (N.D. Ill. January 22, 1993) (citing *Currier v. Baldridge*, 914 F.2d 993, 996 (7th Cir.
1990); *Sivard v. Pulaski Cnty.*, 959 F.2d 662, 667 (7th Cir. 1992); *Streetman v. Jordan*, 918
F.2d 555, 556-57 (5th Cir. 1990)) (same). Accordingly, Plaintiff has not sufficiently alleged
that Defendant Packard violated Plaintiff's First Amendment right to be free from retaliatory
prosecution and, therefore, she is entitled to qualified immunity with regard to this claim.[3]

Assuming arguendo that Plaintiff's bald assertion that probable cause was lacking
is sufficient, Plaintiff's own allegations refute his assertion. In other words, Plaintiff's other
allegations demonstrate the existence of probable cause to charge Plaintiff with crimes.
*Accord Hann*, 2007 WL 1322328, at *7 ("In short, beyond his conclusory allegation that
there was no probable cause for the indecent exposure charges, plaintiff has presented

---

[3] Because no constitutional right was violated with regard to Plaintiff's retaliatory
prosecution claim against Defendant Packard, the Court need not consider the second prong of the
qualified immunity test. *See Saucier*, 533 U.S. at 201 ("If no constitutional right would have been
violated were the allegations established, there is no necessity for further inquiries concerning
qualified immunity.").

only allegations which support, rather than negate, the existence of probable cause."). In order to file charges against Plaintiff, Defendant Packard only needed reason to believe that Plaintiff *himself* committed *a* crime. *Pringle,* 540 U.S. at 371 ("the belief of guilt must be particularized with respect to the person to be searched or seized"); *Turner*, 553 F.3d at 1345 (citation omitted) (noting that probable cause exists if an officer "had reason to believe that a crime–any crime–occurred."). Moreover, the crime which Defendant Packard believed Plaintiff committed could have been different from the crime with which he was ultimately charged. *Turner*, 553 F.3d at 1345. The Complaint contains sufficient factual allegations to show that Defendant Packard could have reasonably concluded that Plaintiff committed a crime, either while arguing with Defendant Packard at District Six or at the scene of the Incident. *See Pringle*, 540 U.S. at 371 (noting that courts determine probable cause through an objective examination of the events precipitating the arrest); *Coburn*, 2003 WL 21662064, at *2 ("Even viewing the facts in the light most favorable to plaintiff, for the purpose of a Rule 12(b)(6) dismissal, public officials are entitled to draw reasonable inferences from the facts they possess at the time.").

At District Six, Plaintiff's factual allegations demonstrate that Defendant Packard had two separate bases to conclude that sufficient probable cause existed to induce Plaintiff's prosecution. The first basis is Mr. Sinton's complaint against Plaintiff. According to Plaintiff, at the scene of the Incident, Mr. Sinton "'refused' to be a witness against Plaintiff, but, after Defendant Packard spoke with Mr. Sinton at District Six, Mr. Sinton decided to "become a witness against [Plaintiff]." Am. Compl. [#27] ¶¶ 18, 36. In other words, Mr. Sinton, the man who Plaintiff confronted and from whom Plaintiff demanded property, apparently later complained to Defendant Packard about Plaintiff's actions during the

16

Incident.  Thus, in light of Mr. Sinton's complaint, a reasonable officer in Defendant Packard's position could determine that probable cause existed to induce Plaintiff's prosecution.  *See Woods*, 234 F.3d at 997 (citation omitted) ("We have found probable cause to arrest based upon uncorroborated citizen complaints . . . ."); *Marotta*, 2009 WL 5491622, at *8 (citation omitted) ("Victim complaints may alone form a basis of probable cause.").

The second basis on which Defendant Packard could have determined that there was probable cause to prosecute Plaintiff is Plaintiff's interaction with her at District Six. Plaintiff alleges that he came "to make a complaint" in order to ask Defendant Packard to take a complaint about Officer Stark's decision not to file a police report.  *Am. Compl.* [#27] ¶ 31.  Plaintiff further alleges that he "would not give up on the citizen complaint," and this conduct frustrated and angered Defendant Packard.  *Id.* ¶ 33.  A reasonable officer in Defendant Packard's position could consider the actions of an intransigent citizen who insists that a supervisor overturn another officer's discretionary decision as the actions of a citizen disturbing the peace.  *See* Den. Rev. Mun. § 38-89(a) (2005) ("It shall be unlawful for any person to disturb or tend to disturb the peace of others by violent, tumultuous, offensive or *obstreperous conduct* or by loud or unusual noises or by unseemly, profane, obscene or offensive language calculated to provoke a breach of the peace or for any person to permit any such conduct in any house or *upon any premises owned or possessed by such person or under their management or control*, when within such person's power to prevent, so that others in the vicinity are or may be disturbed thereby.") (emphasis added); *Wilder v. Turner*, 490 F.3d 810, 813 (10th Cir. 2007) ("Probable cause to arrest exists if, the facts and circumstances within the officer's knowledge are sufficient

17

to justify a prudent officer in believing the defendant committed or is committing an offense." (citation omitted)); *Coburn*, 2003 WL 21662064, at *2 ("To be entitled to qualified immunity, defendant need only have possessed a reasonable belief that probable cause existed." (citation omitted)).  Thus, Plaintiff's own allegations substantiating the existence of probable cause to prosecute him likewise refute the existence of a retaliatory prosecution claim, and instead serve as a sufficient basis for granting the Motion on qualified immunity grounds.

In addition, Defendant Packard could have determined that probable cause existed to induce Plaintiff's prosecution due to the actions he alleged that he committed at the scene of the Incident.  According to Plaintiff, he "confronted" another individual and "demanded" the backpack in that individual's possession at the scene of the Incident. These allegations could reasonably lead Defendant Packard to believe that Plaintiff committed one or more of the following crimes at the scene of the Incident: criminal attempt, theft, petty theft, disturbance of the peace, and assault.  *See* Colo. Rev. Stat. Ann. § 18-2-101(1) (West 2014) ("A person commits criminal attempt if, acting with the kind of culpability otherwise required for commission of an offense, he engages in conduct constituting a substantial step toward the commission of the offense."); Colo. Rev. Stat. Ann. § 18-4-401(1) (West 2013) ("A person commits theft when he or she knowingly obtains, retains, or exercises control over anything of value of another without authorization or by threat or deception . . . ."); Den. Rev. Mun. Code § 38-51.8 (2013) ("A person commits [petty] theft when he knowingly obtains or exercises control over anything of value [worth less than two thousand dollars] of another without authorization, or by threat or deception . . . . "); Den. Rev. Mun. § 38-89 (2005) ("It shall be unlawful for any person to

18

disturb or tend to disturb the peace of others by violent, *tumultuous, offensive or obstreperous conduct . . . .*") (emphasis added); Den. Rev. Mun. Code § 38-93 (1950) ("It shall be unlawful for any person to *intentionally* or recklessly assault, beat, strike, *fight* or inflict violence on any other person.") (emphasis added); *Am. Compl* [#27] ¶¶ 13-14, 31, 33.  Moreover, Plaintiff's legal conclusion that Defendant Packard was not authorized to make a determination of probable cause is erroneous.  *See Am. Compl.* ¶ 32.  Police officers are generally empowered to make determinations of whether a crime is being or has been committed.  *See* Colo. Rev. Stat. § 16-2.5-105 (2013) ("A police officer . . . is a peace officer whose authority shall include the enforcement of all laws of the state of Colorado . . . ."); *id.* § 16-3-110(2) ("A peace officer shall have the authority to act in any situation in which a felony or misdemeanor has been or is being committed in such officer's presence . . . .").

Despite Plaintiff's suggestion to the contrary, Defendant Packard had the authority to determine, based on Plaintiff's conduct, whether probable cause existed to charge Plaintiff with any crime.  Defendant Packard's authority was not limited to simply accepting or rejecting Plaintiff's complaint.  See *Turner*, 553 F.3d at 1345 (citation omitted) (noting that probable cause exists if an officer "had reason to believe that a crime–any crime–occurred.")*; Wilder*, 490 F.3d at 813 ("Probable cause to arrest exists if, the facts and circumstances within the officer's knowledge are sufficient to justify a prudent officer in believing the defendant committed or is committing an offense." (citation omitted)).  Hence, in order, for Plaintiff's allegations to suffice, he must demonstrate the lack of probable cause to charge him with *any* crime.  As discussed above, Plaintiff's own allegations demonstrate that Defendant Packard had probable cause to determine that

Plaintiff committed various crimes.  Thus, even setting aside the conclusory nature of Plaintiff's allegations and the rule that probable cause need only exist for any crime, Plaintiff has failed to sufficiently allege the absence of probable cause for his alleged retaliatory prosecution.

The Court, therefore, respectfully **recommends** that the Motion [#29] be **granted** in so far as it requests that the claim of retaliatory prosecution against Defendant Packard be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

### 2. Retaliatory Arrest

Plaintiff asserts that Defendant Packard arrested him because of his attempt to exercise his First Amendment rights.  The first question that arises with respect to Plaintiff's claim of retaliatory arrest, however, is whether the conduct alleged is an "arrest" for purposes of a First Amendment claim.  "[T]he Supreme Court has identified three types of police/citizen encounters: consensual encounters, investigative stops, and arrests." *United States v. Westhoven*, 562 F. App'x 726, 733 (10th Cir. 2014) (quoting *Cortez v. McCauley*, 478 F.3d 1108, 1115 (10th Cir. 2007) (en banc)).  Regarding investigative stops, "police can stop and briefly detain a person for investigative purposes if the officer has a reasonable suspicion supported by articulable facts that criminal activity may be afoot, even if the officer lacks probable cause." *Westhoven*, 562 F. App'x at 733 (quoting *United States v. Sokolow*, 490 U.S. 1, 7 (1989)).  In contrast, "actual arrests, which are characterized by a highly intrusive or lengthy search or detention, require that a reasonable officer would have probable cause to believe the arrestee has committed a crime." *Westhoven*, 562 F. App'x at 733 (quoting *United States v. Villagrana–Flores*, 467 F.3d 1269, 1273 (10th Cir.

2006)).   However, if "an investigative detention . . . last[s] too long under the specific circumstances of a given case[,] . . . [it] may be transformed into a de facto arrest." *Westhoven*, 562 F. App'x at 734 (quoting *United States v. White*, 584 F.3d 935, 952-53 (10th Cir. 2009)).   "In assessing whether a detention is too long in duration to be justified as an investigative stop, we . . . examine whether the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly, during which time it was necessary to detain the defendant." *Westhoven*, 562 F. App'x at 734 (quoting *United States v. Sharpe*, 470 U.S. 675, 686 (1985)).

Plaintiff alleges that Defendant Packard "order[ed] him to remain in a confined room for approximately 30 minutes under threat that if he left he would be charged with resisting arrest (or a like charge) . . . ." *Am. Compl.* [#27] ¶ 24.   He also alleges that during this time she "spoke to Mr. Sinton and claimed to elicit evidence from him that supported criminal charges against [Plaintiff] for assault and disturbing the peace." *Id.* ¶ 41.   Plaintiff does not allege that he was formally arrested in connection with these events, but that he was merely "served . . . with a summons for the crimes of assault and disturbing the peace . . . ." *Am. Compl.* [#27] ¶ 44.

The Court finds that the allegations provided by Plaintiff, as construed most favorably to him, demonstrate that he was detained, not arrested, for thirty minutes when he was allegedly compelled to remain at the police station while Defendant Packard conducted a brief investigation.   Similar to this case, in *United States v. Westhoven*, the Tenth Circuit Court of Appeals held that although a law enforcement officer detained the plaintiff and told her that she was not free to leave while he conducted a brief investigation, the detention was not an arrest.   562 F. App'x at 734.   In that case, as here, the detention

21

only lasted 20-30 minutes.  *Id.*  The Tenth Circuit stated that the length of detention alone did not make it a de facto arrest.  *Id.* (citing *Sharpe*, 470 U.S. at 686 (declining to accept a per se rule that twenty-minute detention is a de facto arrest); *United States v. Cervine*, 347 F.3d 865, 872-73 (10th Cir. 2003) (upholding stop where it led to canine investigation which lasted approximately fifty minutes)).  Further, the Tenth Circuit has stated that an officer need only "perform[ ] a reasonable and timely investigation to address [her] suspicions."  *Westhoven*, 562 F. App'x at 734 (citing *Sharpe*, 470 U.S. at 686).  Here, Plaintiff has failed to allege that the short investigation conducted by Defendant Packard was either unreasonable or excessively lengthy.  Moreover, the only "intrusive" condition he asserts is Defendant Packard's instruction that he remain in the Room.  The Court finds that as a matter of law Plaintiff's allegations demonstrate that he was merely detained and not the subject of a de facto arrest.  Without an arrest, Plaintiff's claim for retaliatory arrest fails.

Plaintiff does not assert a claim for retaliatory detention.  First, other than the retaliatory prosecution claim, the Amended Complaint is far from clear regarding any other alleged retaliation claims.  [#27] ¶¶ 29-38.  Second, in the Response, Plaintiff only argues retaliatory prosecution and arrest.  *See, e.g.*, [#36] at 4 (arguing that "a plaintiff need not show a lack of probable cause for an allegedly retaliatory arrest or prosecution") (stating that "[i]n the context of an arrest, an act taken in retaliation . . . is actionable . . .").  In the context of his Fourth Amendment claim, Plaintiff separately asserted wrongful detention; the absence of that argument in connection with First Amendment claim is telling.  *Am. Compl.* [#27] ¶ 40.  Further, even if Plaintiff *meant* to also assert a retaliatory detention claim, he has provided Defendant with no notice of his intent to do so in either the

Amended Complaint or in the Response.  Plaintiff has already amended his Complaint once to correct initial pleading deficiencies, yet he still failed to assert a retaliatory detention claim.  Accordingly, the Court does not consider a retaliation claim based on the alleged pre-arrest detention.

The Court therefore respectfully **recommends** that the Motion [#29] be **granted** in so far as it requests that the claim of retaliatory arrest against Defendant Packard be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

### 3. Wrongful Detention Claim

A "seizure" for purposes of the Fourth Amendment occurs when "a reasonable person would have believed that he was not free to leave."  *United States v. Mendenhall*, 446 U.S. 544, 554 (1980) (footnote omitted).  Such seizures include brief investigative detentions by the police.  *Id.* at 551 (footnote omitted) (citing *Davis v. Mississippi*, 394 U.S. 721, 727 (1969); *Terry*, 392 U.S. at 16-19; *United States v. Brignoni-Ponce*, 422 U.S. 873, 878 (1975)).  Detention is "constitutionally permissible if there exists, at the time of the detention, a reasonable suspicion that the person detained is involved in criminal activity."  *People v. Ortega*, 34 P.3d 986, 992-93 (Colo. 2001) (footnotes omitted) (citing *Terry*, 392 U.S. 1 at 24; *Michigan v. Summers*, 452 U.S. 692, 698-700 (1981)).

To state a wrongful detention claim, Plaintiff must sufficiently allege that (1) "the detention was [not] justified at its inception;" and (2) "the officer's actions [were not] reasonably related in scope to the circumstances which justified the interference in the first place."  *United States v. Johnson*, 364 F.3d 1185, 1189 (10th Cir. 2004) (citation omitted).  "At both stages, the reasonableness of the officer's suspicions is 'judged by an objective

standard taking the totality of the circumstances and information available to the officers into account.'" *Id.* (quoting *United States v. Lang*, 81 F.3d 955, 965 (10th Cir. 1996)).

Plaintiff argues that Defendant Packard detained him in the Room "for approximately 30 minutes . . . ." *Am. Compl.* [#27] ¶ 40. According to Plaintiff, he was forced to stay in the Room because Defendant Packard threatened to charge him with resisting arrest if he left. *Id.* Plaintiff asserts that Defendant Packard did not have probable cause to detain him in the Room. *Id.*

Defendants argue that Defendant Packard had reasonable suspicion to detain Plaintiff because "[a] witness had implicated Plaintiff, and the responding Officer believed that [he] was the initial aggressor. . . . [and] Plaintiff 'confronted' Mr. Sinton in an attempt to take a backpack." *Motion* [#29] at 8 (internal citation omitted). Defendants further argue that "Plaintiff voluntarily went to [District Six] seeking to have the matter looked into further and to contend that police on the scene did not handle things properly. . . . [and] Plaintiff cannot now be heard to complain that, as a suspect himself, he should not have been required to wait for the inquiry into an issue that he brought to their attention." *Id.* (citing *Am. Compl.* [#27] ¶ 23).

First, the Court considers whether Defendant Packard was justified in detaining Plaintiff ab initio. *See Johnson*, 364 F.3d at 1189. In the Complaint, Plaintiff alleges that he related at least some of his account of the Incident to Defendant Packard before the detention. *See Am. Compl* [#27] ¶¶ 22-24. As discussed above in section III. A. 1., Plaintiff's account provided Defendant Packard with probable cause to suspect Plaintiff had engaged in criminal activity. Moreover, the threshold for establishing reasonable suspicion is lower than that for probable cause. *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000)

24

("'[R]easonable suspicion' is a less demanding standard than probable cause . . . ."). Like probable cause, the reasonable suspicion inquiry is objective, and Defendant Packard's subjective intent for detaining Plaintiff is irrelevant. *See Whren v. United States*, 517 U.S. 806, 814 (1996) (citing *United States v. Robinson*, 414 U.S. 218, 236 (1973); *Gustafson v. Florida*, 414 U.S. 260, 266 (1973)) ("[T]he Fourth Amendment's concern with 'reasonableness' allows certain actions to be taken in certain circumstances, *whatever* the subjective intent."). Objectively, Defendant Packard could have determined that it was reasonable to believe that Plaintiff committed a crime when he "confronted" Mr. Sinton and "demanded" Mr. Sinton return what he mistakenly believed was his backpack. *See Am. Compl.* [#27] ¶¶ 13-14. Thus, Plaintiff has failed to sufficiently allege that Defendant Packard did not have reasonable suspicion to detain him. *See Johnson*, 364 F.3d at 1189.

Second, the Court considers whether Defendant Packard's actions were "reasonably related in scope to the circumstances which justified the interference in the first place." *See id.* According to Plaintiff, Defendant Packard detained him for thirty minutes after Plaintiff explained, at least in part, the events of the Incident. *Am. Compl.* [#27] ¶¶ 22, 40. While Plaintiff was detained, Defendant Packard spoke with Mr. Sinton about the Incident, and Mr. Sinton's allegations, which Plaintiff alleges were elicited by Defendant Packard through pressure or persuasion, contributed to her decision to press alleged retaliatory charges against Plaintiff. *Id.* ¶ 36. She accomplished these investigative acts related to the Incident within a half hour. *See Am. Compl.* [#27] ¶ 40.

Even considering Plaintiff's allegations in the light most favorable to him, Plaintiff has not sufficiently alleged that Defendant Packard's actions were unreasonable. Defendant Packard's thirty minute detention of Plaintiff –  while she investigated the events *he*

25

described to her – was "the least intrusive means reasonably available to verify or dispel [her] suspicion in a short period of time." *See Florida v. Royer*, 460 U.S. 491, 500 (1983) (citing *Brignoni-Ponce*, 422 U.S. at 881-882; *Adams v. Williams*, 407 U.S. 143, 146 (1972)); *cf. United States v. Sharpe*, 470 U.S. 675, 688 (1985) ("We reject the contention that a 20-minute [detention] is unreasonable when the police have acted diligently and a suspect's actions contribute to the added delay about which he complains."). Moreover, Plaintiff's allegations that Defendant Packard "improperly pressured and/or persuaded Mr. Sinton to become a witness against [Plaintiff]" and "claimed to elicit evidence from [Mr. Sinton] that supported criminal charges against [Plaintiff]" are not only entirely conclusory, but also irrelevant to the determination of whether Plaintiff has stated a claim for wrongful detention. *Am. Compl.* [#27] ¶¶ 36,41; *Johnson*, 364 F.3d at 1189. Thus, Defendant has not sufficiently alleged that Defendant Packard violated Plaintiff's Fourth Amendment right to be free from wrongful detention and, therefore, she is entitled to qualified immunity with regard to this claim.[4]

The Court, therefore, respectfully **recommends** that the Motion [#29] be **granted** in so far as it requests that the claim of wrongful detention against Defendant Packard be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

### 4.  False Imprisonment Claim

"'[F]alse imprisonment is an unlawful restraint upon a person's freedom of

---

[4] Because no constitutional right was violated with regard to Plaintiff's wrongful detention claim against Defendant Packard, the Court need not consider the second prong of the qualified immunity test. *See Saucier*, 533 U.S. at 201 ("If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity.").

locomotion, or the right to come and go when or where one may choose.'" *Scott v. Hern*, 216 F.3d 897, 915 (10th Cir. 2000) (quoting *Blackman v. Rifkin*, 759 P.2d 54, 58 (Colo. Ct. App. 1988)) (further citation omitted).  Courts examining false imprisonment claims under § 1983 look to the common law as a "starting point," but the "'ultimate question' is the existence of a constitutional violation." *Pierce v. Gilchrist*, 359 F.3d 1279, 1290 (10th Cir. 2004) (citing *Taylor v. Meacham*, 82 F.3d 1556, 1561 (10th Cir. 1996); *Wolford v. Lasater*, 78 F.3d 484, 489 (10th Cir. 1996)).  Under both federal and Colorado law, a claim for false imprisonment fails if the acting officer had probable cause to confine the suspect.  *See, e.g.*, *Hinton v. Franck*, No. 00-1142, at *3 (10th Cir. Dec. 18, 2000) (citing *Rose v. City & County of Denver*, 990 P.2d 1120, 1123 (Colo. Ct. App. 1999)) ("Under Colorado law, a claim for false imprisonment cannot stand if there was probable cause to arrest."); *Lemons v. Lewis*, No. 97-3196, at *1 (10th Cir. Dec. 11, 1997) ("The district court correctly determined the existence of probable cause to arrest Mr. Lemons, thereby eliminating any constitutional or tort law basis for his . . . false imprisonment . . . claim[].");  *Briggs v. Minor*, No. 11-cv-00004-CMA-MEH, 2012 WL 4378107, at *4 (D. Colo. Sept. 25, 2012) (quoting *Trimble v. Park Cnty. Bd. of Comm'rs*, No. 99-1426, 2000 WL 1773239, at *3 (10th Cir. Dec. 4, 2000)) (further citation omitted) ("[C]laims for false arrest or false imprisonment 'cannot stand if there was probable cause to arrest.'").

As in section III. A. 1., the survival of Plaintiff's claim depends on whether he has sufficiently pled an absence of probable cause.  The pertinent factual allegations in the Complaint are as follows:

> [Defendant] Packard detained and confined [Plaintiff] in [the] [R]oom for
> approximately 30 minutes, under threat that he would be charged with
> resisting arrest (or a like offense) if he were to leave without possessing

reasonable suspicion or probable cause to believe that he had committed a crime.

While [Plaintiff] was seized, [Defendant] Packard spoke to Mr. Sinton and claimed to elicit evidence from him that supported criminal charges against [Plaintiff] for assault and disturbing the peace.

In reality, Defendant Packard did not have specific probable cause to believe that [Plaintiff] had committed the crimes of assault or disturbing the peace nor did any information or dispositional change of Mr. Sinton provide [her] with any more information that would provide probable cause to believe [Plaintiff] committed those crimes. Mr. Sinton provided no more information than had already been disclosed to Officer Stark, previously.

Defendant . . . Packard knew or should have known that claiming she had obtained evidence that provided her with probable cause to believe that [Plaintiff] committed the crimes of assault or disturbing the peace would result in the criminal prosecution of [him].

*Am. Compl.* [#27] ¶¶ 40-43.

In other words, Plaintiff alleges that Defendant Packard knew she had no probable cause but detained him nonetheless. This assertion is too conclusory. *See e.g.*, *Coburn*, 2003 WL 21662064, at *2 (holding that plaintiff's conclusory allegations did not adequately plead lack of probable cause). Furthermore, as discussed in section III. A. 1, even reading Plaintiff's allegations in the light most favorable to him, Defendant Packard did have probable cause to detain him in the Room. Thus, Plaintiff's false imprisonment claim fails, and Defendant Packard is entitled to qualified immunity with regard to this claim.[5]

The Court, therefore, respectfully **recommends** that the Motion [#29] be **granted** in so far as it requests that the claim of false imprisonment against Defendant Packard be

---

[5] Because no constitutional right was violated with regard to Plaintiff's false imprisonment claim against Defendant Packard, the Court need not consider the second prong of the qualified immunity test. *See Saucier*, 533 U.S. at 201 ("If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity.").

dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

### 5. Malicious Prosecution Claim

Malicious prosecution claims concern unreasonable detention "'[a]fter the institution of legal process.'" *Wilkins v. DeReyes*, 528 F.3d 790, 798 (10th Cir. 2008) (alteration in the original) (quoting *Mondragon v. Thompson*, 519 F.3d 1078, 1083 (10th Cir. 2008); *Wallace v. Kato*, 549 U.S. 384, 390 (2007)). Like false imprisonment claims brought under § 1983, the common law provides the "starting point" for malicious prosecution claims brought under § 1983, but the "ultimate question" is whether a plaintiff has demonstrated that his or her constitutional rights were violated. *See Novitsky v. City of Aurora*, 491 F.3d 1244, 1257-58 (10th Cir. 2007) (citing *Taylor*, 82 F.3d at 1561). A plaintiff who brings a malicious prosecution claim under § 1983 alleging deprivation of his or her Fourth Amendment rights must demonstrate that he or she was subjected to "unreasonable search and seizure." *See* U.S. Const. amend. IV; *Becker*, 494 F.3d at 914-15 (citing *Pierce*, 359 F.3d at 1281; *Taylor*, 82 F.3d at 1558 & n.5; *Wolford*, 78 F.3d at 487) ("In our cases analyzing malicious prosecution under § 1983, we have always proceeded based on a seizure by the state – arrest or imprisonment.").

In this case, Plaintiff's claim is insufficient because he has not alleged that he was seized "[a]fter the initiation of legal process," that is, after Defendant Packard served him with a summons for assault and disturbance of the peace and supplied the allegedly "false information" to the District Attorney. *See Wilkins*, 528 F.3d at 798; *Am. Compl.* [#27] ¶¶ 40-41, 44. The allegedly false evidence contrived by Defendant Packard that contributed to Plaintiff's prosecution does not, by itself, violate his Fourth Amendment right to be free from "unreasonable searches and seizures." *See* U.S. Const. amend. IV; *see also Becker*, 494

F.3d at 915 ("A groundless charging decision may abuse the criminal process, but it does not, in and of itself, violate the Fourth Amendment absent a significant restriction on liberty."). Thus, Plaintiff has not sufficiently alleged a claim of malicious prosecution, and Defendant Packard is entitled to qualified immunity with regard to this claim.[6]

The Court, therefore, respectfully **recommends** that the Motion [#29] be **granted** in so far as it requests that the claim of malicious prosecution against Defendant Packard be dismissed pursuant to Fed. R. Civ. P. 12(b)(6). As this disposes of all of Plaintiff's claims for relief against Defendant Packard, the Court further **recommends** that Defendant Packard be **dismissed** as a defendant in this case.

**B. Defendant Denver**

**1. *Monell* Claim**

Because the Court has determined that Plaintiff has not stated any constitutional claims against Defendant Packard, Plaintiff's *Monell* claim against Defendant Denver must necessarily fail as well. *See Wilson v. Meeks*, 98 F.3d 1247, 1255 (10th Cir. 1996) (quoting *Monell v. Dep't of Social Servs.*, 436 U.S. 658 (1978)) ("[M]unicipalities may not be held liable 'unless actions pursuant to official municipal policy of some nature caused a constitutional tort.'").

The Court, therefore, respectfully **recommends** that the Motion [#29] be **granted** in so far as it requests that the claim against Defendant Denver be dismissed pursuant to

---

[6] Because no constitutional right was violated with regard to Plaintiff's malicious prosecution claim against Defendant Packard, the Court need not consider the second prong of the qualified immunity test. *See Saucier*, 533 U.S. at 201 ("If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity.").

Fed. R. Civ. P. 12(b)(6).   As this disposes of Plaintiff's only claim for relief against Defendant Denver, the Court further **recommends** that Defendant Denver be **dismissed** as a defendant in this case.

### IV.  Conclusion

Accordingly, for the reasons stated above, the Court respectfully **RECOMMENDS** that Defendants' Motion [#29] be **GRANTED**, and that all of Plaintiff's claims against Defendants Packard and Denver be **DISMISSED with prejudice**.[7]

IT IS **ORDERED** that pursuant to Fed. R. Civ. P. 72, the parties shall have fourteen (14) days after service of this Recommendation to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned.   A party's failure to serve and file specific, written objections waives de novo review of the .ecommendation by the District Judge, Fed. R. Civ. P. 72(b); *Thomas v. Arn*, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions. *Makin v. Colo. Dep't of Corr.*, 183 F.3d 1205, 1210 (10th Cir. 1999); *Talley v. Hesse*, 91 F.3d 1411, 1412-13 (10th Cir. 1996).   A party's objections to this Recommendation must be both timely and specific to preserve an issue for de novo review by the district Court or for appellate review. *United States v. One Parcel of Real Prop.*, 73 F.3d 1057, 1060 (10th Cir.

---

[7] The dismissal of an action pursuant to Rule 12(b)(6) is a resolution on the merits and thus is usually prejudicial. *Brierley v. Schoenfeld*, 781 F.2d 838, 843 (10th Cir. 1986) (affirming a district court decision to dismiss with prejudice an action brought under 42 U.S.C. § 1983); *accord Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) (citation omitted) ("[W]here a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice.").

1996).

Dated:  August 25, 2014                    BY THE COURT:

Kristen L.  Mix
United States Magistrate Judge